DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, that terminated the parental rights of appellant Crystal P., the natural mother of Martine P., Waliyyudden M., and Jy-Daesha P., and granted permanent custody to appellee, Lucas County Children Services ("LCCS").
 {¶ 2} On August 12, 2002, LCCS filed a complaint in dependency and neglect and a motion for a shelter care hearing in the court below. The complaint alleged that Martine, born in March 2000, Waliyyudden ("Wali"), born in May 2001, and Jy-Daesha, born in April 2002, were dependent and neglected in light of the conditions of their family home and appellant's failure to remedy those conditions. The complaint further alleged that the fathers of the children, Waliyyudden M., Sr., the father of Wali and Jy-Daesha, and Ramon Y., the father of Martine, were both whereabouts unknown. The complaint then alleged that LCCS had been involved with the family since September 2001 due to the conditions in the home. Specifically, the complaint alleged that the home was filthy and roach infested; that the children were filthy and left to sit in dirty diapers; that the children were permitted to eat off of the floor; that appellant had failed to keep doctor appointments for Martine and Wali, even though she was provided taxi service; that Martine was behind on his immunizations and had a high lead level; that furnace maintenance men refused to enter the home to make necessary repairs due to the filthy conditions of the home; that on one occasion, Wali had been found playing with an ammonia soaked mop; on another occasion a potty was found overturned with urine spread on the floor; that appellant was provided day care and other services to allow her to participate in parenting services and to maintain her home but that she had refused to participate consistently; and that appellant was on probation for robbery and receiving stolen property and had not been following through with the terms of her probation. Accordingly, the complaint sought emergency shelter care custody of the three children.
 {¶ 3} After a shelter care hearing, the lower court found that there was probable cause to believe that the children were in immediate danger, ordered their removal from the home and ordered LCCS to take the children into shelter care custody. Thereafter, LCCS filed an original case plan in the court below. The goal of the plan was to return the children to appellant. To achieve that goal, the plan provided that appellant was to attend parenting classes and work with Healthy Families to learn how to maintain safe and clean housing for her children. The plan noted that appellant blames others for her problems, does not feel that she needs services and had minimal interaction with her children. The plan therefore provided that appellant was to obtain a court ordered diagnostic assessment and was to follow through with the recommendations of that assessment to learn how to become more interactive with her children. The case plan also recognized that Martine and Wali had special needs and provided services to address those needs.
 {¶ 4} The case came before a lower court magistrate for an adjudication and disposition hearing on October 3, 2002. Subsequently, the court entered a judgment finding clear and convincing evidence that the three children were dependent and neglected due to the filthy and deplorable conditions in the home. The court then found that it was in the best interest of the children that temporary custody of them be awarded to Laquell P., appellant's 21 year old sister.
 {¶ 5} On November 18, 2002, the Lucas County Court of Common Pleas ordered appellant to serve out a sentence of 17 months imprisonment after the court determined that she had violated the terms of her community control. The imposition of sentence was based on appellant's convictions on one count of receiving stolen property, a fifth degree felony, and one count of attempted robbery, a fourth degree felony. Appellant served out that sentence and was released in April 2004.
 {¶ 6} After appellant was incarcerated, LCCS filed a motion in the court below to change disposition from temporary to legal custody. LCCS sought this change so that Laquell P. could be awarded legal custody of the children. Along with this motion, LCCS filed an amended case plan which changed the placement goal from reunification to placement of the children in a permanent alternative placement, excluding adoption. Thereafter, however, in April 2003, LCCS filed a motion to dismiss its motion to change disposition. At this time, LCCS requested that it be awarded temporary custody of the children in order to facilitate an award of permanent custody in the future. Along with that motion, LCCS filed an amended case plan which changed the goal of the plan to adoption. That plan noted that appellant was incarcerated and that the fathers of the children could not be located. In a decision and judgment entry of June 16, 2003, the lower court granted LCCS's motion and awarded it temporary custody of the children.
 {¶ 7} On September 5, 2003, LCCS filed a motion for permanent custody of all three children in the court below pursuant to R.C.2151.353(B) and R.C. 2151.414. In its motion, LCCS alleged that the children were not abandoned or orphaned and that they could not or should not be placed with their parents within a reasonable time and that permanent custody was in the children's best interest. The complaint further alleged that appellant was incarcerated after violating the terms of her probation, that she lost her housing, that she did not participate in case plan services and that neither father participated in case plan services. Finally, the complaint alleged that the children had been removed from their home for an extended period, were in need of a permanent plan, and that it was in their best interest that permanent custody be awarded to LCCS so that an adoptive placement could be facilitated. On November 14, 2003, however, the children were removed from their aunt's home due to allegations of marijuana use in the home.
 {¶ 8} On May 17, 2004, the case proceeded to a hearing on the motion for permanent custody. Appellant appeared for the proceeding but neither Waliyyudden M. nor Ramon Y. appeared. The first witness to testify was Susan Mills, who had previously been a case worker at LCCS. Mills testified that she first had contact with appellant in October 2001, when LCCS first received a complaint regarding the conditions in appellant's home. At that time, appellant only had two children. Mills described the house as filthy with a serious cockroach problem, that there was food all over the house, and that the children were not receiving adequate medical attention. At that time, however, the children were not removed from the home. Rather, appellant was provided services to help her deal with her situation. In particular, appellant was assigned a community advocate, Cindy Whiteside, to help appellant with budgeting, house cleaning, and day care services. Mills testified, however, that appellant was very resistant to services and did not agree with the case plan set up by LCCS. Mills stated that at times, the conditions in the home would improve, but then the home would return to its original filthy and hazardous condition. Mills testified that at times, the home presented a fire hazard in that exits were blocked with clutter. Appellant, however, was very resistant and did not recognize the hazards in the home. Appellant reasoned that she could not keep her house clean because the care of the children took too much of her time. When offered day care services, however, appellant only sent the children one or two times. Mills further testified that appellant was referred to St. Vincent's for parenting classes but that she did not follow through. In January 2002, LCCS formalized a safety plan under which appellant's mother agreed to go into appellant's home on a daily basis to make sure that the home was clean and agreed to remove the children from the home if it appeared that they were at risk due to the conditions in the home. Appellant's mother also agreed to make sure that the children attended their medical appointments. Nevertheless, appellant was so resistant to services that the community advocate closed the case.
 {¶ 9} Donna Lewis, a post emancipation caseworker with LCCS, testified next. A post emancipation caseworker works with young adults who have been emancipated from the agency after they have been the subject of permanent custody or legal custody proceedings. Appellant was herself the child of termination proceedings and was 19 years old at the time of the hearing below. Lewis first met appellant in November 2001, when she visited appellant's home with Susan Mills. Lewis stated that her role was to try to get appellant motivated to get her GED. Appellant, however, was not cooperative and often missed scheduled weekly appointments. In observing appellant with her children, Lewis testified that there was a lack of bonding and extremely poor interaction. Appellant left the children in soiled diapers and neglected their nutritional needs. In describing the conditions in the home, Lewis stated that the home was filthy and had cockroaches. Lewis recalled one occasion when she was at the home and Martine took a day old pork chop off of a left over dinner plate and began eating it. When Lewis offered to provide appellant with a high chair she refused, saying that she could take care of her own children. Lewis testified that in December 2001, she recommended that the children be removed from the home. In discussing appellant's probation with her, Lewis stated that appellant did not know her probation officer's name and did not comply with the terms of her probation. Finally, Lewis terminated her involvement in the case because of appellant's failure to cooperate.
 {¶ 10} Tamara Mitchell was the next witness to testify. Mitchell was the LCCS ongoing caseworker who was assigned to the case on August 21, 2002, shortly after the children were removed from the home. Mitchell first met appellant On August 26, 2002, when she visited appellant and the children at Laquell P.'s home. The following week, Mitchell returned to Laquell P.'s home to meet with appellant and discuss implementing the case plan. Under the case plan, appellant was to provide appropriate housing for her children. Appellant was also required to undergo a diagnostic assessment so that services could be provided to help her deal with anger management issues and to help her understand why LCCS was involved in her life. Early Intervention services were also provided to Martine and Wali, because of concerns with speech delays and socialization issues respectively, and to Jy-Daesha for less extreme delays. Mitchell testified that although appellant signed the case plan, she was resistant to the services recommended, did not take them seriously and was very stubborn about sharing information about her children that was necessary to help meet their needs. As for appellant herself, Mitchell testified that she missed her appointment for a diagnostic assessment and did not follow through with that. In November 2002, appellant was then sent to prison for violating the terms of her probation and had not completed any case plan services. With regard to the children, Mitchell testified that they were initially placed with Laquell P., appellant's sister, a single mother with three children of her own. In November 2003, however, it was discovered that Laquell's boyfriend had been smoking marijuana in the home and the children were removed from that placement. The children were then placed in a foster home where they have remained. Mitchell testified that the children have adjusted very well to the foster home and have been making great strides with their developmental delay issues. Martine, who was speech delayed, talks constantly, and Jy-Daesha is on target developmentally. Wali, the child with the greatest behavior problems, is benefiting from the occupational therapy that he needs. Mitchell stated that the foster parents are interested in adopting the children.
 {¶ 11} Mitchell then testified about appellant's contact with the children since she was released from prison in April 2004. Mitchell has attended three visits between appellant and the children since her release. The first visit was for Jy-Daesha's birthday. Appellant picked up a cake for the visit but when she walked in, Mitchell did not witness much physical contact between appellant and the children. Mitchell testified that appellant tapped the children on the shoulder, asked how they were, and then let them continue playing. Mitchell further testified, however, that since her release from prison, appellant has been attending parenting classes. With regard to those parenting classes, Mitchell stated that although appellant is having difficulty managing three children in the class, she does respond to feedback. Mitchell also noted that appellant did complete various programs while in prison, including mandatory alcohol and drug education, women only health and survival issues, HIV and AIDS awareness, phase one of responsible family life skills, and that she made the Clearview School honor role. In Mitchell's opinion, however, permanent custody was in the best interest of the children. Mitchell stated that she was making her recommendation based on the special needs of the children and their need for permanency, as well as their need for their caregiver to follow through with therapeutic appointments. Mitchell then stated that because appellant had just been released from prison, had anger issues, and had been resistant to services, she believed appellant could not work through her issues in three to six months. Mitchell further stated that since her release from prison, appellant has not obtained housing but is living with her mother.
 {¶ 12} Kathleen Sheets next testified. Sheets is an early intervention psychologist with the Lucas County Board of Mental Retardation. She works with children ages birth to three years who have delays or who are at risk for delays. In that capacity, she came into contact with appellant's children. In February 2003, Martine and Wali were assessed for delays and qualified for services. Martine was identified as having delays in his speech and Sheets' goal was to get him set up for a preschool program. She did then get him into a Head Start program. Wali's special needs require occupational therapy, including "sensory integration therapy" to help calm him down and focus. Sheets stated that the foster parents have been very cooperative and have followed through with Wali's therapy. She further stated that the children have improved greatly since being in the foster home and that they are much calmer.
 {¶ 13} In addition to the above witnesses, appellant presented four witnesses of her own. Appellant's sister, Laquell P., had custody of the children for a little over a year after they were first removed from appellant's home. Laquell testified that appellant loves her children and they love her. She stated that while appellant was in prison she wrote Laquell frequently and always asked about her children. She further testified that while she had custody of the children, Martine regularly asked about his mother but that the other two children were too young to ask questions about appellant. She then testified regarding appellant's most recent visit with the children. Because Laquell drives appellant to the visits, she attends them too. During the last visit, Martine and Jy-Daesha cried when it was time for them to leave. In describing appellant, Laquell stated that she is a stubborn person and does not like to be told what to do, but that since serving her term of imprisonment her attitude has improved and that appellant now will do anything to keep her children. In support of that statement, Laquell noted that appellant took it upon herself to start parenting classes when she was released from prison. She further stated, however, that appellant is doing the best she can and that she is trying to raise her children on her own without help from their fathers.
 {¶ 14} In addition to Laquell, Eugene H. and Shanelle J., testified on appellant's behalf. Eugene is a close family friend who has seen appellant with her children. He described appellant as well bonded to her children and stated that when appellant was in prison she wrote him letters in which she always asked about the children. Eugene admitted, however, that he has not seen appellant with her children since she was released from prison. Shanelle J., appellant's sister-in-law, stated that she has known appellant for 11 or 12 years and described appellant as bonded with her children. During the times that she has seen appellant with her children, Shanelle stated that she has never witnessed anything that would be considered inappropriate. Shanelle lived in the same apartment complex as appellant, however, and testified that she never saw any problems with appellant's living conditions. Shanelle further stated that she has been present during some of appellant's visits with her children and she described appellant as being affectionate with the children. In her opinion permanent custody would not be in the best interest of the children. She did not know, however, if any of the children had any special needs.
 {¶ 15} Jacqueline A., appellant's mother, also testified at the hearing below. Jacqueline stated that appellant is a good mother but that she has a smart mouth. She further stated, however, that appellant has matured, took advantage of educational and parenting programs while in prison and is now ready to be a parent to her children. In describing appellant's visits with her children since her release from prison, Jacqueline stated that the children did not know who appellant was at first but that they have since become attached to her and cry at the end of the visits.
 {¶ 16} Next, appellant testified on her own behalf. Appellant agreed that when LCCS first became involved in her life she refused to comply with the case plan and did not want to do anything that anybody told her to do. She stated, however, that she believes she has changed and that she is now willing to do whatever it takes to get her children back. In that regard, she stated that she had participated in several programs while in prison and had taken steps to get her GED. When she was released from prison, she then enrolled in a parenting program at St. Vincent's Hospital. She further stated that she was now ready to participate in an assessment, although in that regard she stated "I guess they feel something is wrong with me, like, I got an anger problem." Regarding her current bond with her children, appellant testified that it was progressing, given how long she has been away from them, and that it was better than she expected it to be. On cross-examination, however, appellant denied that either Martine or Wali had any special needs and said with regard to Wali: "He hyper. It ain't nothing — I mean, as far as him going to therapy it probably will help, but it's not nothing that — I mean, basically just calming him down won't do nothing." Appellant was also asked about her disciplinary record while in prison. Despite appellant's assertion that she had no problems with authority while in prison, when confronted with her prison record she admitted to 11 disciplinary violations in 11 months. Moreover, after appellant was released from Marysville and was living in a halfway house, she was fired from a job for calling her supervisor a bitch less than one month after being placed there. When questioned about her anger management issues, appellant responded that she did not believe that she needed anger management class. When further questioned about what she would do to set up a household to provide for her children, she stated that she was providing for them without any help from their fathers before LCCS took custody of them. She then did state, however, that she had spoken to a landlord about a house and was looking for a job.
 {¶ 17} Finally, at the hearing below, the court heard from the guardian ad litem. The guardian had submitted an updated report and recommendation on the date of the hearing and the judge stated that she would read the report. The judge, however, further asked the guardian to summarize her report at the hearing so that the attorneys could have an opportunity to question her if they wished. The guardian's report is summarized as follows: Because of her incarceration, appellant could not work on her case plan, although she did, to her credit, complete several programs while in prison. She has not, however, begun an anger management program and was not able to visit her children from November 2002, until April 2004. The foster mother reported that when the children returned from their first visit with appellant after their long separation, none of he children appeared to know who appellant was. Appellant has a history of noncooperation with authority figures that did not improve while in prison, as evidenced by her disciplinary record in prison and her inability to keep her job while living in a halfway house. The guardian opined that appellant's history of resistance to authority figures did not bode well for her children. Although appellant has not missed any of her visits with her children since her release from prison, the children do not know her. The oldest was not yet three when appellant was incarcerated. The guardian further stated that it would take appellant quite some time before she could be reunited with her children. She would have to complete her current parenting class as well as an interactive one with her children, work on anger management issues, and maintain stable housing. If and when she finds stable housing, a community advocate would need to work with her for some time. Indeed, the guardian stated that all of appellant's issues would require the involvement of authority figures, which appellant still resists. With regard to the father of the children, the guardian stated that one was still incarcerated and neither were worthy of reunification. Finally, the guardian stated that the children were adoptable and that their foster parents had already indicated an interest in adopting them. Based on her review of the matter, the guardian strongly recommended that the court grant LCCS's motion for permanent custody.
 {¶ 18} On May 18, 2004, the proceedings reconvened in the court below and the court rendered its decision terminating the parental rights of appellant and the fathers of her children and granting LCCS permanent custody of the children. In making its decision, the court addressed appellant and stated:
 {¶ 19} "And I want to make one thing real clear about what I have not considered in making my decision. I haven't considered whether you had dirty dishes in your sink, and I haven't considered whether the kids are eating in a high chair or not. And I have not considered whether you were 30 minutes late to an appointment or not because you didn't have transportation. And I haven't considered whether one time there was a dirty diaper that needed changing. And I haven't considered whether your adjustment at Marysville was average or good or poor because as compared to, what? I don't' know.
 {¶ 20} "I have considered what you have done. I've considered the total record of what's been said here, and I just don't believe, Crystal, that you can meet your emotional needs, your needs to attend to your own maturity, your own education, your own taking care of yourself while at the same time meeting the special needs of three children under the age of five. I do not believe with all the facts the way they're coming together here that it's humanly possible for anyone to do that. I do not doubt your willingness at this point, and I certainly do not doubt your love for your children.
 {¶ 21} "We've got two kids with at least special needs. Wali, whether you want to call him hyper or you want to call him the kind of old fashion thing that he's a busy boy or you want to call him the fancy name that the therapist had, sensory integration, whatever you want to call it, Waliyyudden is probably a full-time job.
 {¶ 22} "Martine needs some speech therapy, and whatever energy is left needs to go into JyDaesha at age two. The task is to get three kids under the age of five ready for school for learning to give them consistent care and give them stability and placement, and given all the things that you have to do for yourself and those people that you trust the most and what they need to do for themselves and their children, I just cannot make the finding that these three kids can get placed back with you in time for them to get what is needed in their best interest."
 {¶ 23} On June 2, 2004, the trial court filed a judgment entry documenting her findings and granting LCCS permanent custody of the three children. The court specifically found, pursuant to R.C. 2151.414(B)(1) and (E)(1), (4) and (10), by clear and convincing evidence that the minor children cannot or should not be placed with either of their parents within a reasonable period of time, and that, pursuant to R.C.2151.414(D), an award of permanent custody to LCCS was in the children's best interest. The court further found that LCCS made reasonable efforts to prevent the continual removal of the children from the home, and made reasonable efforts to finalize a permanent plan for the children through case plan services but that such efforts were unsuccessful. In particular, the court found that although the services of a community advocate, a post-emancipation caseworker, psychological counseling, parenting classes and visitation were offered, the conditions which caused the initial contact with the family in 2001, and the subsequent removal of the children from the home in 2002, have not been remedied and the children cannot or should not be returned home. The court further found that the parents had demonstrated a lack of commitment to the children by their failure to follow through with case plan services and failure to comply with the terms of probation which resulted in incarceration and a failure to visit and maintain contact with the children on a regular basis. With regard to Martine's father, Ramon Y., the court found that he had abandoned his child. With regard to its best interest finding, the court stated that it would be contrary to the welfare of the children to return to the family home, that the children have been removed from the family home for an extended period of time, and were in need of a permanent placement. The court further found that two of the children had been identified has having special needs and that all three children required a consistent, nurturing home that could meet their needs. Accordingly, the court ordered that permanent custody of all three children be awarded to LCCS for adoptive placement and planning and that all parental rights in and to the children be terminated.
 {¶ 24} It is from that judgment that appellant now appeals, raising the following assignment of error:
 {¶ 25} "The trial court erred when it found by clear and convincing evidence that permanent custody of the child [sic] should be awarded to Lucas County Children Services Bureau [sic] pursuant to O.R.C. 2151.414(B)(1) O.R.C. 2151.414(E)(1), (4) and (10)."
 {¶ 26} R.C. 2151.414(B)(1) provides:
 {¶ 27} "Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 28} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 29} "(b) The child is abandoned.
 {¶ 30} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 31} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 32} "For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixth days after the removal of the child from home."
 {¶ 33} In the present case, the trial court appears to have proceeded under R.C. 2151.414(B)(1)(a) in granting LCCS permanent custody with regard to appellant. That statute requires the court to make two findings: (1) that a grant of permanent custody to the agency is in the children's best interest, and (2) that the children cannot or should not be placed with either parent within a reasonable period of time. In order to find that the children cannot or should not be placed with either parent within a reasonable period of time, a court must make a finding under R.C.2151.414(E). In this case, the court made findings under R.C.2151.414(E)(1), (4) and (10). Those sections provide:
 {¶ 34} "In determining at a hearing held pursuant to division (A) of this section * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 {¶ 35} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 36} "* * *
 {¶ 37} "(4) The parent had demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 {¶ 38} "* * *
 {¶ 39} "(10) The parent has abandoned the child."
 {¶ 40} As noted in the statute, a court's findings under R.C.2151.414(E) must be supported by clear and convincing evidence. The Supreme Court of Ohio has held that clear and convincing evidence is: "that measure or degree of proof which is more than a mere `preponderance of the evidence,' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 41} In addition to finding that the child cannot be placed with a parent within a reasonable period of time, before granting permanent custody to a children's services agency the court must also find that doing so is in the best interests of the child or children. R.C. 2151.414(D) lists the factors the court shall consider in order to determine the best interests of the child. That section provides in relevant part:
 {¶ 42} "In determining the best interest of a child at a hearing held pursuant to division (A) of this section * * * the court shall consider all relevant factors, including, but not limited to, the following:
 {¶ 43} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care-givers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 44} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 45} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 46} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 47} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
 {¶ 48} "For the purposes of this division, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home."
 {¶ 49} With regard to appellant, the lower court made findings under R.C. 2151.414(E) (1) and (4). After thoroughly reviewing the record in this case, we conclude that the trial court's findings that Martine, Wali and Jy-Daesha cannot and should not be placed with appellant within a reasonable time and that permanent custody was in the children's best interest were supported by clear and convincing evidence. Appellant's refusal to comply with the terms of her probation or to even meet with her probation officer resulted in the termination of that probation and the imposition of a 17 month sentence. As a result, her three very young children barely knew who she was when they saw her for the first time after her release from prison. We cannot disagree with the trial court's conclusion that this demonstrated a lack of commitment toward the children. This alone was sufficient to support a finding that the children could not be placed with the children within a reasonable time or should not be placed with the children. In addition, there was clear and convincing evidence that appellant failed to remedy the conditions that led to the children's removal from the home. The children were removed because of appellant's inability to provide adequate, safe housing. Yet, at the hearing below, appellant expressed her opinion that she was taking care of her children before LCCS removed them from the home. Moreover, at the time of the hearing below, appellant had not yet obtained housing and only had a vague plan as to how she would set up a household.
 {¶ 50} As for the court's best interest finding, the children have all thrived in their foster home and have been in the temporary custody of LCCS since August 2002. They are clearly in need of a legally secure permanent placement. Indeed, their foster parents have expressed an interest in adopting them. The guardian ad litem, as well as other professionals involved in this case, all opined that an award of permanent custody to LCCS would be in the best interest of all three children. Accordingly, the trial court's finding that an award of permanent custody was in the best interest of the children was supported by clear and convincing evidence. The sole assignment of error is, therefore, not well-taken.
 {¶ 51} On consideration whereof, the court finds that substantial justice has been done the party complaining and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Pursuant to App.R. 24, appellant is ordered to pay the court costs of this appeal.
Judgment affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, P.J., Pietrykowski, J., Singer, J., concur.